USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 5/7/19

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------ x
In re STAGE PRESENCE, INC.,          :
                                     :
           Debtor.                   :
------------------------------------ x
MUSIC MIX MOBILE, LLC, JEFF SHAW     :
PRODUCTIONS, INC., ONE FOOT          :
PRODUCTIONS, LLC, V.I.P. PROMPTING   :
CORPORATION, IDEA ASYLUM             :
PRODUCTIONS, INC., KENIGMA, INC.,    :
EAST SHORE SOUND, INC., WEUSI        :
BARAKA CHAPMAN, LLOYD JORDAN, and    :
GEORGE M. BERA,                      :
                                     :
           Plaintiffs,               :
                                     :
           -v-                       :
                                     :
ALLEN NEWMAN, MATTHEW WEINER, STAGE  :
PRESENCE, INC., ONE FOR EACH ISLAND  :
LTD., GREGORY MARQUETTE, and "XYZ    :
CORP.", being the fictitious name    :
of one or more entities,            :
                                     :
           Defendants.               :
------------------------------------ x
```

Chapter 11

Case No.
12-10525 (MEW)

18-cv-10662 (JSR)

OPINION AND ORDER

Adv. Pro. No.
15-01392 (MEW)

JED S. RAKOFF, U.S.D.J.

Plaintiffs Music Mix Mobile, LLC, Jeff Shaw Productions,

Inc., One Foot Productions, LLC, V.I.P. Prompting Corporation,

Idea Asylum Productions, Inc., Kenigma, Inc., East Shore Sound,

Inc., Weusi Baraka Chapman, Lloyd Jordan, and George M. Bera

appeal from several orders issued in an adversary proceeding

before the bankruptcy court (Wiles, J.). ECF No. 14. Defendants

Allen Newman and Matthew Weiner oppose, and Weiner requests the

imposition of sanctions. ECF Nos. 15, 16. For the reasons below,

the bankruptcy court's orders are affirmed in all relevant respects, and Weiner's request for sanctions is denied.

## Background

This bankruptcy appeal arises from a television production of a live concert in Washington, D.C. Plaintiffs-Appellants are employees and vendors who contracted with Debtor Stage Presence, Inc. to provide labor and services for the concert. Defendant-Appellee Allen Newman was the owner of Stage Presence and, along with defendant-appellee Matthew Weiner, one of the executive producers of the concert. Plaintiffs were never paid for the work that they did on the show.

Stage Presence filed for bankruptcy on February 9, 2012, Case No. 12-10525 (MEW) (Bankr. S.D.N.Y.), and on November 2, 2015, plaintiffs instituted the adversary proceeding below, Adv. Pro. No. 15-01392 (MEW) (Bankr. S.D.N.Y.). According to the Revised Amended Complaint ("RAC"), which was filed on March 3, 2016, Stage Presence is a "loan-out corporation" through which Newman sold his television production services over a period of several decades. RAC ¶ 27, BR Dkt. No. 21.[1] Together with Weiner, Newman met the founders of a charity called Childhelp, which was

---

[1] "BR Dkt. No." refers to the docket entry number in the adversary proceeding below, Adv. Pro. No. 15-01392 (MEW) (Bankr. S.D.N.Y.).

planning to hold a benefit concert in California. Id. ¶¶ 33-34.
Weiner and Newman convinced Childhelp to turn the concert into a
televised event in Washington D.C. for which Weiner and Newman
would be the executive producers. Id. ¶ 34.[2]

The producers entered into a contract with Childhelp to
confirm the arrangement, which Weiner signed on behalf of One
From Each Island, Ltd. ("OFEI"), an entity that was never
legally formed. Id. ¶¶ 35-36. OFEI agreed to assume all of the
production costs associated with the televised concert. Id.
¶ 35. The contract specified that "all employees hired by the
Producers shall be paid industry standard wages," and it
"place[d] the copyright in the tv production in the name of
OFEI, but create[d] no rights whatsoever on behalf of" Stage
Presence. Id. ¶¶ 39-40. The contract further "provide[d] that
Newman, Weiner and . . . OFEI were only entitled to fees from
sponsorship funds they raised, over and above all production
costs." Id. ¶ 41.

In addition to entering into a contract with Childhelp,
Weiner entered into an agreement on behalf of OFEI with Black
Entertainment Television ("BET"), a television station that

---

[2] Gregory Marquette, a defendant below, also met with Childhelp
and was an executive producer. RAC ¶ 34. He is not a defendant
here because he has been discharged via personal bankruptcy. ECF
No. 14, at 3 n.2.

3

agreed to air the Childhelp concert in exchange for OFEI's payment of BET's production expenses. Id. ¶ 43. Although Newman and Weiner planned to cover these costs (and the other costs associated with the televised concert) through sponsorship and advertising sales, id. ¶ 31, they struggled to raise any money, id. ¶ 45. They nevertheless continued to represent that they had arranged for financing and that Stage Presence would be producing the show. Id. ¶ 53. In particular, Newman made repeated representations about funding to Allen Kelman, whom Newman enlisted as a producer, and who hired individuals to work on the show for Stage Presence. Id. ¶¶ 52-57, 73.

The RAC alleged, for example, that Newman misrepresented that he had arranged for financing at a February 5, 2010 meeting at BET, at which Weiner and Kelman were present. Id. ¶ 53. The RAC also alleged that Newman doctored an email to Kelman to create the appearance that Stage Presence was going to receive a $5 million loan from an entity called Geneve International Trust ("Geneve") Id. ¶ 55. In reality, the RAC alleged, the loan was intended for Anguilla Music Production and Publishing, Ltd. ("AMPP"), another entity that was affiliated with Newman. Id. ¶ 57. And on a March 29 phone call, "Newman told Kelman that the Show was 'good to go.'" Id. ¶ 66. Throughout and after the show,

4

the RAC alleged, Newman and Weiner continued to maintain the
appearance that everyone would get paid. See id. ¶¶ 67-72, 76.

The concert took place on April 13, 2010, id. ¶ 72, and
Stage Presence filed for bankruptcy on February 9, 2012, id.
¶ 10. On March 3, 2016, plaintiffs filed the RAC and brought
claims against Newman and Weiner for breach of contract, fraud,
aiding and abetting fraud, unjust enrichment, tortious
interference with contract, and minimum wage violations. Id.
¶¶ 111-78. With respect to the breach of contract claim,
plaintiffs alleged that Newman and Weiner could be held liable
under three theories: First, plaintiffs alleged, Newman and
Weiner were members of a de facto partnership or partnership by
estoppel with Stage Presence. Id. ¶ 116. Second, plaintiffs
alleged that they were third-party beneficiaries of OFEI's
contracts with Childhelp and BET, that Weiner assumed personal
liability under those contracts, and that the contracts were
agreed to and at least partially performed by Newman and Weiner.
Id. ¶¶ 121-24. And third, plaintiffs alleged that Newman and
Weiner could be held liable under an alter ego or veil piercing
theory. Id. ¶ 125.

Defendants moved to dismiss, BR Dkt. Nos. 27, 30, and in a
Memorandum Decision issued on July 19, 2016, Bankruptcy Judge
Michael E. Wiles granted defendants' motions in part and denied

5

them in part, BR Dkt. No. 46. As relevant here, the bankruptcy court held that plaintiffs had failed to state a breach of contract claim on a partnership by estoppel theory because the RAC "d[id] not allege that Plaintiffs believed that a partnership existed, or that any representation was made to Plaintiffs themselves (during contract formation) that the individual defendants were 'partners' in any way, or that the Plaintiffs entered into contracts with the expectation that a partnership would bear the liability for payment." Id. at 9.

The court also held that plaintiffs failed to state a breach of contract claim on a third-party beneficiary theory because "the provisions in both the Childhelp and the BET [contracts] did not refer to Plaintiffs and did not express any intent to confer contractual rights on the Plaintiffs themselves." Id. at 11. Instead, the court held, the relevant provisions in the contracts referred to "employees," and plaintiffs were not employees. Id. at 10. Furthermore, with respect to Weiner, the court held that he did not execute the contracts in his personal capacity. Id.

Finally, regarding plaintiffs' alter ego/veil piercing theory, the court held that the RAC adequately stated a claim against Newman because it alleged that he "owned and controlled Stage Presence, used it to conduct his own affairs, ignored

6

corporate formalities and caused Stage Presence to engage in transactions with Newman and with affiliated entities for which no consideration was paid." Id. at 12. The court held that the RAC did not state a claim against Weiner, however, because there were no allegations that Weiner was an officer, director, or employee of Stage Presence, or that he had any control over the company. Id. at 12-13.

Moving to plaintiffs' fraud and aiding and abetting claims, the bankruptcy court held that the RAC failed to "identif[y] a single statement made by Newman to Plaintiffs themselves regarding the status of financing for the" concert. Id. at 14. Instead, the RAC alleged only that Newman made misleading statements to Kelman. Id. Given that the RAC never alleged that Kelman communicated these statements to plaintiffs or that plaintiffs relied on these statements, the court held that plaintiffs failed to state a fraud claim against Newman. Id. at 15-16.

Similarly, the court held that the RAC failed to identify any misrepresentations communicated to plaintiffs by Weiner. Id. at 16. And with respect to omissions, the court held that plaintiffs failed to allege that Weiner had an affirmative duty to speak. Id. In addition, regarding both Kelman and Weiner, the court held that plaintiffs' fraud claims were duplicative of

7

their breach of contract claims. Id. at 16-17. Finally, as to

Weiner, the court held that plaintiffs failed to state a claim

for aiding and abetting because the RAC did not allege any

underlying fraud and because Weiner's silence did not constitute

substantial assistance. Id. at 17.

After disposing of plaintiffs' fraud claims, the court held

that the RAC failed to state a claim for unjust enrichment

against Newman. Id. The court reasoned that "there [wa]s no

allegation that Newman received something of value that

belong[ed] to Plaintiffs themselves." Id. Instead, the RAC

alleged that "Newman took corporate opportunities that belonged

to Stage Presence." Id. The court concluded that this claim

belonged to Stage Presence and its estate, and although

plaintiffs "filed a separate motion seeking permission to pursue

this claim on behalf of the estate," the court deferred ruling

on that motion. Id.

Finally, the court held that plaintiffs plausibly alleged

wage claims as to Newman and Weiner. Id. at 18-19. Accordingly,

the court denied defendants' motion to dismiss in that respect.

Id. at 19.

After the bankruptcy court issued its decision on

defendants' motion to dismiss, Weiner moved for reconsideration

of the court's decision to allow plaintiffs' wage claims to

8

proceed. BR Dkt. No. 50. As relevant here, the court invited additional briefing on the issue of whether plaintiffs' wage claims were governed by New York or D.C. law, and it converted Weiner's motion into a motion for summary judgment. BR Dkt. No. 67. In a Memorandum Opinion issued on September 28, 2016, the court held that the claims of plaintiffs Weusi Baraka Chapman and Lloyd Jordan were governed by D.C. law and that the three-year statute of limitations for claims brought under D.C. labor law applied. Id. at 12-14. In so holding, the court rejected plaintiffs' argument that New York's borrowing statute — and, with it, New York's six-year statute of limitations — should apply. Id. Because plaintiffs did not bring their claims for more than five years after the claims accrued, the court held that the claims were time barred. Id. at 12.

After the court granted summary judgment for Weiner on plaintiffs' wage claims, plaintiffs moved for summary judgment on their breach of contract/alter ego and wage claims against Newman. BR Dkt. No. 80. Newman also moved for summary judgment on these claims. BR Dkt. No. 82. On November 1, 2017, after hearing argument on these motions, the court denied plaintiffs' motion in its entirety and granted Newman's motion only with respect to the wage and hour claim. BR Dkt. No. 92. The court did not issue a written opinion but instead incorporated the

9

reasons set forth on the record. See BR Dkt. No. 96 (transcript
of oral argument).

The only relevant remaining claim after summary judgment
was the breach of contract/alter ego claim against Newman, which
went to a bench trial on October 11 and 12, 2018. The court
issued its bench decision on October 26, 2018. BR Dkt. No. 97.
As relevant here, the court began its analysis by noting that
"the separate existence and status of a corporation is not
lightly disregarded" and that "an owner ordinarily is not liable
for the debts incurred by a corporation." Id. at 14. Moreover,
the court explained, "Plaintiffs may pierce the corporate veil,
and impose liability on an owner, where the evidence shows that
the owner exercised complete domination over the corporation
with respect to the transaction at issue such that the
corporation had no separate identity, and that such domination
was used to commit a fraud or a wrong against the plaintiffs
that resulted in injury to the plaintiffs." Id. at 15.

After listing a nonexclusive set of factors that courts
consider when determining whether a corporation is completely
dominated by its owner, the court described the relevant aspects
of Stage Presence. See id. at 15-17. The court noted, for
example, that Stage Presence had been owned by Newman since 1987
or 1988; that it had not always had its own offices; that Newman

10

had for some time been the sole director and employee; and that formal director and shareholder meetings had not been held for some time. Id. at 16-17. The court also noted, however, that Stage Presence did have its own offices for many years; that it "ha[d] always retained counsel to provide legal advice, and accountants to assist with bookkeeping and financial questions"; and that its "accountants may also at some point have served as treasurers." Id.

Furthermore, the court found:

Stage Presence filed all of its required tax returns and maintained its corporate franchise. It kept its own separate books and records with the assistance of outside accountants. The outside accountants prepared annual financial statements for Stage Presence. Stage Presence always had bank accounts, and they were always separate from Mr. Newman's accounts. Stage Presence did not commingle funds with Mr. Newman. It did not pay personal expenses on behalf of Mr. Newman. It made some distributions to Mr. Newman, just as any corporation does if it has excess funds, but it did so only after a review by the outside accountants and a determination of what funds could safely be distributed in light of upcoming potential cash needs.

Stage Presence obtained funding for its projects from some combination of retained cash or payments by advertising agencies, sponsors or other persons. It always contracted in its own name. Stage Presence hired payroll processing firms to handle payments to employees in connection with individual jobs. It also purchased insurance in its own name and for its own account. All licenses and permits needed for productions were obtained in the name of Stage Presence itself.

11

Id. at 17. Given these facts, the court concluded that Stage
Presence was not completely dominated by Newman. Id. In
addition, the court reasoned that "the absence of other
directors, or of regular directors' meetings, or of directors'
minutes, is a sign of sloppiness, rather than an indication that
the separate existence of Stage Presence was or should be
ignored." Id. at 19. The court also rejected plaintiffs'
argument that the corporate veil should be pierced because Stage
Presence was undercapitalized. Id. at 20-21.

As a final matter, the court addressed and rejected
plaintiffs' argument that Newman wrongfully used Stage Presence
to hire them. Id. at 21-22. The court explained that Newman was
not required to hire plaintiffs personally, and it noted that
"Plaintiffs knew and understood that they were entering into
contracts with Stage Presence." Id. at 22. Furthermore, the
court held, it was immaterial that Childhelp contracted with
OFEI, rather than with Stage Presence, because plaintiffs
contracted with Stage Presence, and Stage Presence contracted
with Geneve for funding. See id. at 22-23. Here the court found,
contrary to plaintiffs' allegations, that Geneve agreed to loan
$5 million to Stage Presence, not to AMPP. Id. at 26-29. The
court also found that Newman genuinely believed that the funding
from Geneve would come through, and that "Newman and Stage

12

Presence were the victims of fraud, not the perpetrators of it."
Id. at 25. Finally, the court found that the loan agreement
between Geneve and Stage Presence was real, thereby rejecting
plaintiffs' theory that the document was a sham. Id. at 26-29.

On October 30, 2018, the court dismissed all remaining
claims and entered judgment. BR Dkt. Nos. 98-99. On November 9,
2018, plaintiffs filed a notice of appeal. BR Dkt. No. 101.

On appeal, plaintiffs argue that the bankruptcy court
erred: (1) by granting defendants' motions to dismiss
plaintiffs' breach of contract claim based on a partnership
theory; (2) by granting Weiner's motion to dismiss plaintiffs'
breach of contract claim based on alter ego and other theories;
(3) by granting defendants' motions to dismiss plaintiffs'
fraud-based claims; (4) by granting summary judgment for Weiner
on plaintiffs' wage claims; (5) by granting summary judgment for
Newman on plaintiffs' wage claims; (6) by denying plaintiffs'
motion for summary judgment on their breach of contract/alter
ego claim against Newman; and (7) by granting final judgment for
Newman on plaintiffs' breach of contract/alter ego claim. See
Plaintiff-Appellants' Opening Brief in Support of Their Omnibus
Appeal of Several Orders and the Final Judgment of the
Bankruptcy Court 15 ("AOB"), ECF No. 14.

13

Newman and Weiner have both filed opposition briefs. See
Brief for Defendant-Respondent, Allen Newman ("Newman Opp."),
ECF No. 15; Memorandum of Law of Defendant-Appellee Matthew
Weiner in Opposition to the Appeal of Plaintiffs-Appellants
("Weiner Opp."), ECF No. 16. In addition to contesting
plaintiffs' arguments, Weiner argues that this Court should
grant him attorneys' fees because plaintiffs' claims and appeal
against him are frivolous.

## Analysis

### I.   Standard of Review

"When a district court acts as an appellate court in an
appeal from an order of the bankruptcy court, its determination
is subject to plenary review." In re Dairy Mart Convenience
Stores, Inc., 411 F.3d 367, 371 (2d Cir. 2005).[3] Accordingly,
this Court will "review the Bankruptcy Court's decision,
accepting its findings of fact unless they are clearly erroneous
and reviewing its legal conclusions de novo." In re Trico Marine
Servs., Inc., 340 F. App'x 55, 55 (2d Cir. 2009).

### II.  Whether the Bankruptcy Court Properly Dismissed Plaintiffs'
### Breach of Contract Claim Based on a Partnership Theory

---

[3] Unless otherwise indicated, in quoting cases all internal
quotation marks, alterations, emphases, footnotes, and citations
are omitted.

14

"To demonstrate the existence of a partnership, a plaintiff must prove four elements: (1) the parties' sharing of profits and losses; (2) the parties' joint control and management of the business; (3) the contribution by each party of property, financial resources, effort, skill, or knowledge to the business; and (4) the parties' intention to be partners." Kidz Cloz, Inc. v. Officially For Kids, Inc., 320 F. Supp. 2d 164, 171 (S.D.N.Y. 2004). Even where no actual partnership exists, "Section 27 of New York's Partnership Law states that when 'a person, by words spoken or written or by conduct, represents himself, or consents to another representing him to any one, as a partner in an existing partnership . . . , he is liable to any such person to whom such representation has been made, who has, on the faith of such representation, given credit to the actual or apparent partnership.'" Milano by Milano v. Freed, 64 F.3d 91, 98 (2d Cir. 1995) (quoting N.Y. P'ship Law § 27).

As relevant here, the RAC alleged that Newman and Weiner met the founders of Childhelp, a charity that had planned a benefit concert in California. RAC ¶¶ 33-34. Defendants, while "holding themselves out as . . . production 'partners,' convinced Childhelp to allow them to turn the benefit into a televised event . . . in Washington, D.C., of which they would be the Executive Producers." Id. ¶ 34. Defendants then entered

15

into a contract with Childhelp in which they agreed to assume all production costs, and which Weiner signed on behalf of OFEI, an entity that was never legally formed. Id. ¶¶ 35-36. Weiner also entered into an agreement with BET on behalf of OFEI in which BET agreed to air the Childhelp concert in exchange for OFEI's payment of BET's production expenses. Id. ¶ 43.

Although OFEI contracted with Childhelp and BET to assume the costs of the production, Stage Presence ultimately "(i) was the sole entity to contract with the Plaintiffs, (ii) actually paid BET $25,000 to air the Show, (iii) paid the Executive Producers' expenses, and (iv) is obligated, according to [Stage Presence's] schedules, to pay the Executive Producers $600,000 in producer fees for the Show." Id. ¶ 114. The RAC alleged that a partnership existed between Stage Presence, the Executive Producers, and OFEI, and that defendants are estopped from denying the existence of this partnership. Id. ¶¶ 116-117.

As noted above, the bankruptcy court held that the RAC did not state a breach of contract claim on a partnership by estoppel theory because plaintiffs failed to allege that they "believed that a partnership existed, or that any representation was made to Plaintiffs themselves (during contract formation) that the individual defendants were 'partners' in any way, or that the Plaintiffs entered into contracts with the expectation

16

that a partnership would bear the liability for payment." BR
Dkt. No. 46, at 9.

On appeal, plaintiffs argue that the RAC adequately alleged
a partnership among Newman, Weiner, and Stage Presence. AOB 16.
There is no dispute, plaintiffs contend, that: (1) "Weiner and
Newman, in concert, started a new business venture to earn
profits from the Show"; (2) Weiner and Newman "incurred debts
for each other (e.g., Stage Presence which indisputably was
owned solely by Newman hiring people and production vendors,
including the plaintiffs) while Weiner was signing contracts
with BET requiring OFEI to pay money to BET to air the show";
and (3) "money . . . was paid by Stage Presence (not OFEI) . . .
which would redound to Weiner and Newman's personal benefit as
the Producers under the Childhelp Agreement with OFEI." Id.
Plaintiffs also argue that Weiner and Newman "repeatedly called
themselves 'partners.'" Id.

In addition, plaintiffs argue, "Weiner's signature on the
Childhelp Agreement and BET Contracts on behalf of OFEI . . .
was evidence of [a] partnership because a party who enters into
a contract on behalf of a nonexistent entity is personally
liable on the contract." Id. "Even after the bankruptcy petition
was filed," plaintiffs contend, defendants "continued to treat
it as a partnership, scheduling debts allegedly owed to Newman

17

and Weiner, thereby showing [Stage Presence's] belief that OFEI and [Stage Presence] are the same." Id. Plaintiffs argue that the existence of a partnership "explains why Stage Presence would incur debt with no right of recoupment or profit potential," as well as "why Stage Presence would do the production work, while allowing the copyright to be owned by OFEI and the production fees to go to Newman and Weiner personally under the clear terms of the Childhelp Agreement." Id. at 17. Finally, plaintiffs argue, the bankruptcy court failed to consider their arguments that defendants were de jure or de facto partners. Id. at 17-18.

After reviewing the arguments above, this Court concludes that the bankruptcy court properly dismissed plaintiffs' breach of contract claim based on a partnership theory. Plaintiffs contracted with Stage Presence, and there are no allegations in the RAC that establish a partnership between Stage Presence, on the one hand, and Newman and Weiner, on the other. The RAC never alleged that Newman and Weiner intended to form a partnership with Stage Presence, and it did not allege that they intended to share profits and losses with Stage Presence. If anything, the RAC alleged, to the contrary, that Newman and Weiner hoped to gain at Stage Presence's expense by using Stage Presence "as a

shell corporation in which they could rack up debts while assigning profits and benefits elsewhere." RAC ¶ 90.

Furthermore, the RAC did not allege that Newman and Weiner held themselves out as Stage Presence's partners when Stage Presence hired plaintiffs, or that plaintiffs relied on any such representation. As Newman succinctly explains in his brief, plaintiffs have "failed to allege facts, or explain in their appeal brief, how it is that each of them separately entered into an employment agreement with a corporation they had dealt with before on other projects, but wound up in an employment relationship with a partnership that the corporation was supposedly a member of." Newman Opp. 18-19. Weiner similarly points out in his brief that "there is no allegation made in the [RAC] that anyone ever communicated to any of the Plaintiffs the existence of any partnership." Weiner Opp. 20.

For these reasons, this Court affirms the bankruptcy court's dismissal of plaintiffs' breach of contract claim against Newman and Weiner insofar as that claim was based on a partnership theory.

**III. Whether the Bankruptcy Court Otherwise Properly Dismissed Plaintiffs' Breach of Contract Claim Against Weiner**

Under New York law, "piercing the corporate veil requires a showing that: (1) the owners exercised complete domination of

19

the corporation in respect to the transaction attacked; and (2) that such domination was used to commit a fraud or wrong against the plaintiff which resulted in plaintiff's injury." Morris v. New York State Dep't of Taxation & Fin., 623 N.E.2d 1157, 1160-61 (N.Y. 1993). As noted above, the bankruptcy court held that the RAC did not state a claim against Weiner under a veil piercing theory because there were no allegations that Weiner was an officer, director, or employee of Stage Presence, or that he had control over the company. BR Dkt. No. 46, at 12-13.

On appeal, plaintiffs argue that the bankruptcy court erroneously concluded that Weiner could not be Stage Presence's alter ego because he was not alleged to be a shareholder. AOB 24; see Freeman v. Complex Computing Co., 119 F.3d 1044, 1051 (2d Cir. 1997) ("[A]n individual who exercises sufficient control over the corporation may be deemed an equitable owner, notwithstanding the fact that the individual is not a shareholder of the corporation."). Furthermore, plaintiffs argue, "because of Weiner's partnership with Newman, he through the partnership had Newman's control." AOB 24.

This Court agrees with the bankruptcy court that the RAC failed to allege that Weiner had control over Stage Presence, let alone the "complete domination" that is required to establish liability under a veil piercing theory. Moreover, the

20

Court concludes that the RAC failed to establish that Weiner and Newman were partners, and Weiner therefore cannot be held liable on this basis. Accordingly, this Court affirms the bankruptcy court's decision to dismiss plaintiffs' breach of contract claim against Weiner insofar as that claim was based on a veil piercing theory.

## IV. Whether the Bankruptcy Court Properly Dismissed Plaintiffs' Fraud-Based Claims Against Newman and Weiner

"To state a cause of action for fraud, a plaintiff must allege a representation of material fact, the falsity of the representation, knowledge by the party making the representation that it was false when made, justifiable reliance by the plaintiff and resulting injury." Kaufman v. Cohen, 760 N.Y.S.2d 157, 165 (1st Dep't 2003). "A third party can recover damages for a fraudulent misrepresentation if he can establish that he relied upon it to his detriment, and that the defendants intended the misrepresentation to be conveyed to him." Peerless Mills, Inc. v. AT&T, 527 F.2d 445, 450 (2d Cir. 1975).

Under Rule 9(b) of the Federal Rules of Civil Procedure – made applicable to adversary proceedings through Rule 7009 of the Federal Rules of Bankruptcy Procedure – a plaintiff must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when

21

the statements were made, and (4) explain why the statements were fraudulent." Lerner v. Fleet Bank, N.A., 459 F.3d 273, 290 (2d Cir. 2006). "In cases where the alleged fraud consists of an omission and the plaintiff is unable to specify the time and place because no act occurred, the complaint must still allege: (1) what the omissions were; (2) the person responsible for the failure to disclose; (3) the context of the omissions and the manner in which they misled the plaintiff, and (4) what defendant obtained through the fraud." Odyssey Re (London) Ltd. v. Stirling Cooke Brown Holdings Ltd., 85 F. Supp. 2d 282, 293 (S.D.N.Y. 2000). Moreover, where a fraud claim is grounded in an alleged omission, "there must be a showing that a duty of disclosure existed." Aaron Ferer & Sons Ltd. v. Chase Manhattan Bank, Nat. Ass'n, 731 F.2d 112, 123 (2d Cir. 1984).

Finally, "[a] fraud claim should be dismissed as redundant when it merely restates a breach of contract claim, i.e., when the only fraud alleged is that the defendant was not sincere when it promised to perform under the contract." First Bank of Americas v. Motor Car Funding, Inc., 690 N.Y.S.2d 17, 20-21 (1st Dep't 1999). A fraud claim may nevertheless "be maintained where a plaintiff pleads a breach of duty separate from, or in addition to, a breach of the contract." Id. at 21. For example, "a misrepresentation of present facts is collateral to the

22

contract (though it may have induced the plaintiff to sign the contract) and therefore involves a separate breach of duty." Id.

As relevant here, the RAC alleged that Newman made repeated misrepresentations about funding to Kelman, whom Newman enlisted as a producer and who hired individuals to work on the show for Stage Presence. RAC ¶¶ 52-57, 73. The RAC alleged, for example, that Newman misrepresented that he had arranged for financing at a February 5, 2010 meeting at BET, at which Weiner and Kelman were present. Id. ¶ 53. In addition, the RAC alleged that Newman doctored an email to Kelman to create the appearance that Stage Presence was going to receive a $5 million loan from Geneve, when the loan was actually intended for AMPP. Id. ¶¶ 55, 57. And on a March 29 phone call, "Newman told Kelman that the Show was 'good to go.'" Id. ¶ 66. Furthermore, the RAC alleged, Weiner knew that Newman's representations were false and that others would rely on them, but he said nothing. Id. ¶ 54. The RAC also alleged that Newman and Weiner continued to maintain the appearance that everyone would get paid, both throughout and after the production of the show. See id. ¶¶ 67-72, 76.

The bankruptcy court held that these allegations were insufficient to state fraud-based claims against Newman or Weiner. BR Dkt. No. 46, at 14-16. The court explained that the RAC failed to "identif[y] a single statement made by Newman to

23

Plaintiffs themselves regarding the status of financing." Id. at 14. Instead, the RAC alleged only that Newman made misleading statements to Kelman. Id. Because the RAC never alleged that Kelman communicated these statements to plaintiffs – and because the RAC never alleged that plaintiffs relied on these statements – the court held that the RAC did not plausibly allege fraud as to Newman. Id. at 15-16.

Moving to Weiner, the court similarly held that the RAC failed to identify any misrepresentations communicated to plaintiffs. Id. at 16. Furthermore, the court held, the RAC did not allege fraud against Weiner based on his alleged omissions because it did not establish an affirmative duty to disclose. Id. And because the RAC failed to allege fraud as to either defendant, the court concluded, it also failed to allege aiding and abetting as to Weiner. Id. at 17. As a final matter, the court reasoned that, for both Newman and Weiner, plaintiffs' fraud claims were duplicative of their breach of contract claims, and the RAC did not allege that plaintiffs were fraudulently induced to contract with defendants. Id. at 16-17.

This Court agrees with the bankruptcy court that the RAC failed to state fraud-based claims against Newman or Weiner. Even assuming – contrary to the bankruptcy court's ultimate findings at trial – that Newman knowingly made false

24

representations to Kelman regarding the show's funding status, the RAC is devoid of allegations that Kelman conveyed these representations to plaintiffs, or that plaintiffs relied on these representations to their detriment. At oral argument of the instant appeal, the Court pressed plaintiffs' counsel to identify a single such representation, and plaintiffs' counsel was unable to do so. See Transcript dated March 22, 2019, at 3:3-6:23. This deficiency is enough to doom the RAC's fraud claim against Newman and its aiding and abetting claim against Weiner, and the Court accordingly affirms the dismissal of each of these claims.[4]

## V. Whether the Bankruptcy Court Properly Granted Summary Judgment for Weiner on Plaintiffs' Wage Claims

In the RAC, plaintiffs Chapman and Jordan brought claims for minimum wage violations under the New York Labor Law ("NYLL") and, in the alternative, under Washington D.C.'s minimum wage law. RAC ¶¶ 172-78. The statute of limitations is six years under New York law and three years under D.C. law. See N.Y. Lab. Law § 198; D.C. Code Ann. § 32-1308. In addition, under New York's borrowing statute, "[a]n action based upon a

---

[4] Because the Court affirms the dismissal on these grounds, it does not address the bankruptcy court's other conclusions, such as its conclusion that plaintiffs' fraud claims were duplicative of their breach of contract claims.

cause of action accruing without the state cannot be commenced after the expiration of the time limited by the laws of either the state or the place without the state where the cause of action accrued, except that where the cause of action accrued in favor of a resident of the state the time limited by the laws of the state shall apply." N.Y. C.P.L.R. 202.

The bankruptcy court denied defendants' motions to dismiss plaintiffs' wage claims, BR Dkt. No. 46, at 18-19, and Weiner subsequently moved for reconsideration, BR Dkt. No. 50. After inviting additional briefing on the issue of whether plaintiffs' wage claims were governed by New York or D.C. law, the bankruptcy court converted Weiner's motion into a motion for summary judgment. BR Dkt. No. 67. In a Memorandum Opinion issued on September 28, 2016, the court held that plaintiffs' wage claims were governed by D.C. law and that the three-year statute of limitations for claims brought under D.C. labor law applied. Id. at 12-14. In so holding, the court rejected plaintiffs' argument that New York's borrowing statute — and, with it, New York's six-year statute of limitations — should apply. Id. Because plaintiffs did not bring their claims for more than five years after the claims accrued, the court held that the claims were time barred. Id. at 12.

On appeal, plaintiffs argue that their wage claims are governed by New York law because "Chapman and Jordan reside in New York, were recruited and hired in New York, by Stage Presence, a New York corporation via its agent, Kelman, a New Yorker, [and] [t]hey were also to be paid after the Show in New York via a payroll to be prepared by Media Services, another New Yorker." AOB 26 (citations omitted). Plaintiffs argue that the bankruptcy court erred because it "relied on cases holding that there is a 'presumption' that statutes do not have extraterritorial effect to conclude [that plaintiffs] had no protection under the NYLL, without ever even considering whether the presumption might be overcome in this case." Id.

This Court disagrees. "Under New York Law, it is a settled rule of statutory interpretation, that unless expressly stated otherwise, no legislation is presumed to be intended to operate outside the territorial jurisdiction of the state enacting it." Rodriguez v. KGA Inc., 64 N.Y.S.3d 11, 12 (1st Dep't 2017). Article 19 of the NYLL, moreover – which contains the provision under which plaintiffs sue – has a "Statement of public policy" that provides that it was enacted to cover "persons employed in some occupations in the state of New York." N.Y. Lab. Law § 650. Accordingly, the Court concludes that the NYLL does not cover wage claims brought by Chapman and Jordan for work performed in

D.C. See Rodriguez, 64 N.Y.S.3d at 13 ("Since th[is] statute[]
do[es] not expressly apply on an extraterritorial basis,
plaintiffs' claims under th[is] provision[], based on labor
performed exclusively outside New York, do not state a cause of
action under . . . Article 19 . . . .").

In so holding, this Court joins a chorus of courts in this
District that have reached the same conclusion. See, e.g.,
Warman v. Am. Nat'l Standards Inst., No. 15-cv-5486 (RA), 2016
WL 3676681, at *2 (S.D.N.Y. July 6, 2016) ("As NYLL is silent on
its extraterritorial application, courts in this district have
held that it does not apply extraterritorially."); Magnuson v.
Newman, No. 10 Civ. 6211 (JMF), 2013 WL 5380387, at *5 (S.D.N.Y.
Sept. 25, 2013) ("[T]he statute does not apply to people who
work outside of the State of New York."); O'Neill v. Mermaid
Touring Inc., 968 F. Supp. 2d 572, 579 (S.D.N.Y. 2013) ("Nothing
in the statute suggests that the legislators intended to give
persons who were outside New York the right to come to New York
to sue their employers."). Moreover, plaintiffs concede on
appeal that D.C labor law also does not apply to their claims.
See Transcript dated March 22, 2019, at 7:2-3. As a result,
plaintiffs have identified no statute under which they may bring
their wage claims, and this Court therefore affirms the
dismissal of plaintiffs' wage claims.

**VI.  Whether the Bankruptcy Court Properly Granted Summary Judgment for Newman on Plaintiffs' Wage Claims**

After the bankruptcy court granted summary judgment for Weiner, plaintiffs and Newman cross-moved for summary judgment on, inter alia, plaintiffs' wage claims against Newman. BR Dkt. Nos. 80, 82. On November 1, 2017, after hearing oral argument, the court denied plaintiffs' motion and granted Newman's motion with respect to the wage claims. BR Dkt. No. 92.

On appeal, plaintiffs argue that Newman waived his statute of limitations defense because he "never moved to amend his answer and failed to raise this defense until he moved for summary judgment, years into the proceeding." AOB 32.

This Court disagrees. A "court may consider the merits of an affirmative defense . . . raised for the first time at the summary judgment stage, so long as the plaintiff has had an opportunity to respond." Astor Holdings, Inc. v. Roski, 325 F. Supp. 2d 251, 260 (S.D.N.Y. 2003). Here there is no question that plaintiffs had an opportunity to respond to Newman's statute of limitations defense, as Weiner had already raised an identical defense. Because plaintiffs were not prejudiced by Newman's failure to raise the defense in his answer, the Court holds that it was permissible for the bankruptcy court to consider it. See Curry v. Syracuse, 316 F.3d 324, 331 (2d Cir.

2003). The Court accordingly affirms the bankruptcy court's grant of summary judgment for Newman on plaintiffs' wage claims.

**VII. Whether the Bankruptcy Court Properly Denied Plaintiffs' Motion for Summary Judgment on Their Breach of Contract/Alter Ego Claim Against Newman**

As noted above, the bankruptcy court denied both parties' motions for summary judgment on plaintiffs' breach of contract/alter ego claim against Newman. BR Dkt. No. 92. On appeal, plaintiffs argue that the bankruptcy court erred in denying their motion. AOB 18.

Although plaintiffs acknowledge that "an appeal will not ordinarily lie" where "judgment against a party upon trial . . . follows denial of that party's pre-trial motion for summary judgment," Pahuta v. Massey-Ferguson, Inc., 170 F.3d 125, 130-31 (2d Cir. 1999), they argue that "this rule does not apply where the district court's error was purely one of law," Schaefer v. State Ins. Fund, 207 F.3d 139, 142 (2d Cir. 2000); see Plaintiff-Appellants' Reply Brief in Further Support of Their Omnibus Appeal of Several Orders and the Final Judgment of the Bankruptcy Court 5 ("Reply"), ECF No. 17. First, plaintiffs argue, the bankruptcy court failed to consider their theory that Stage Presence was acting as Newman's agent and that Newman could thus be held liable under the New York Court of Appeals'

decision in Walkovszky v. Carlton, 223 N.E.2d 6 (N.Y. 1966). See Reply 6. Second, plaintiffs argue that the bankruptcy court erroneously required them to prove that Newman subjectively believed that he would not be able to pay them. Id. at 5.

The Court rejects both of plaintiffs' arguments. Beginning with plaintiffs' contention that the bankruptcy court ignored their "agency" liability theory, plaintiffs never raised Walkovszky in their summary judgment papers, see BR Dkt. No. 81, and they mentioned the agency theory only briefly at oral argument, see BR Dkt. No. 96, at 8:14-15. Furthermore, plaintiffs have not shown that the bankruptcy court ignored the factors relevant to such a theory. The Second Circuit has explained that courts evaluating agency liability claims should consider "whether the corporation is a shell being used by the individual shareowners to advance their own purely personal rather than corporate ends," Wm. Passalacqua Builders, Inc. v. Resnick Developers S., Inc., 933 F.2d 131, 138 (2d Cir. 1991), and plaintiffs have put forth no evidence that the bankruptcy court failed in this regard.[5]

---

[5] Although the bankruptcy court did not issue a written opinion on its denial of summary judgment, it incorporated its statements made on the record. BR Dkt. No. 92. There, the court expressed skepticism about plaintiffs' alter ego claims because "the facts don't suggest that Stage Presence had no independent

31

Neither have plaintiffs shown that the bankruptcy court required them to prove that Newman subjectively believed he would not be able to pay them. Instead, the court stated at oral argument that summary judgment was not warranted because much of plaintiffs' case was "based on [plantiffs'] contentions of Mr. Newman's beliefs, intent, plans, knowledge, and [plaintiffs'] assertions about records that might have been falsified." BR Dkt. No. 96, at 9:2-4. The court concluded that these issues were not appropriate for resolution on summary judgment, but were better suited for trial. See id. at 9:4-5. This Court agrees, and it finds at the minimum that the bankruptcy court did not commit the kind of pure legal error that would make review of the court's denial of summary judgment appropriate. Accordingly, the bankruptcy court's denial of summary judgment is affirmed.

# VIII. Whether the Bankruptcy Court Properly Ruled for Newman at Trial on Plaintiffs' Breach of Contract/Alter Ego Claim

As discussed, plaintiffs' breach of contract/alter ego claim went to a bench trial on October 11 and 12, 2018, and the bankruptcy court issued a decision in Newman's favor on October

---

existence." BR Dkt. No. 96, at 8:21-23. This comment suggests that the court did consider factors relevant to an agency liability theory.

26, 2018. BR Dkt. No. 97. On appeal, plaintiffs repeat the
argument above that the bankruptcy court applied the wrong legal
standard because it thought "the sole issue of fact needed to be
tried was whether Newman subjectively believed that money would
be generated from the Show and contributions sufficient to allow
him to fund Stage Presence and thereby pa[y] the plaintiffs."
AOB 25. Plaintiffs argue that the court's factual findings were
clearly erroneous because "[t]he record is replete with evidence
of lies and false statements to the court . . . [and] [t]here is
no way Newman acted in good faith." Id. Finally, in their reply
brief, plaintiffs appear to repeat their argument above that the
court failed to consider an "agency" theory at trial. Reply 6.

After reviewing plaintiffs' arguments, the Court concludes
that the bankruptcy court correctly entered judgment for Newman.
As noted, proving an alter ego claim "requires a showing that:
(1) the owners exercised complete domination of the corporation
in respect to the transaction attacked; and (2) that such
domination was used to commit a fraud or wrong against the
plaintiff which resulted in plaintiff's injury." Morris, 623
N.E.2d at 1160-61. Here, the bankruptcy court explained in
meticulous detail "that the separate corporate existence of
Stage Presence was honored and recognized and that there was an
absence of the type of domination and disregard of corporate

33

form that would be needed to sustain the remedy of piercing the corporate veil." BR Dkt. No. 97, at 21; see id. at 17 (describing the ways in which "the separate corporate existence of Stage Presence was scrupulously guarded and observed"). These findings were not clearly erroneous, and they support the bankruptcy court's conclusion that Newman did not dominate Stage Presence in the manner necessary to pierce the corporate veil.

That Newman did not dominate Stage Presence is sufficient grounds to enter judgment for him on plaintiffs' alter ego claim. And this conclusion is not altered by plaintiffs' sweeping reference to Newman's "lies and false statements." Moreover, plaintiffs fail to establish that the bankruptcy court ignored their agency liability theory. As explained, "[t]he critical question" in assessing an agency liability claim "is whether the corporation is a shell being used by the individual shareowners to advance their own purely personal rather than corporate ends." Wm. Passalacqua Builders, 933 F.2d at 138; see id. ("Where there is proof that defendants were doing business in their individual capacities to suit their own ends — shuttling their own funds in and out without regard to the corporation's form — this sort of activity exceeds the limits of the privilege of doing business in a corporate form and warrants the imposition of liability on individual stockholders.").

Here, the bankruptcy court found "that in all important operational and financial respects the separate existence of Stage Presence was honored and fully respected." BR Dkt. 97, at 19. Furthermore, the court found that "Stage Presence did not commingle funds with Mr. Newman," and "[i]t did not pay personal expenses on behalf of Mr. Newman." Id. at 17. These findings are not clearly erroneous, and taken together with the court's other findings, they suggest strongly that Stage Presence was a real corporation, rather than an agent of Newman's that existed to advance his personal interests. As the bankruptcy court stated: "The mere fact that Mr. Newman employed Stage Presence as [a] contracting entity was not itself in any way an abuse of the privilege of doing business in the corporate form. That is the whole reason why Stage Presence existed, and it was a legitimate reason." Id. at 22.

Accordingly, the Court affirms the bankruptcy court's decision after trial to rule for Newman on plaintiffs' breach of contract/alter ego claim.

## IX. Whether Weiner Should Be Awarded Attorneys' Fees

Under 28 U.S.C § 1927, "[a]ny attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court

to satisfy personally the excess costs, expenses, and attorneys'
fees reasonably incurred because of such conduct." Rule 8020(a)
of the Federal Rules of Bankruptcy Procedure similarly gives
district courts discretion to award sanctions for frivolous
appeals. In the instant case, Weiner requests sanctions because
"Plaintiffs' counsel's actions in pursuing this frivolous appeal
against Weiner [are] so completely without merit as to require
the conclusion that i[t] must have been undertaken for an
improper purpose or in bad faith." Weiner Opp. 34.

Although it may be that plaintiffs have not presented the
most compelling case on appeal, the Court does not conclude that
their arguments and conduct have been frivolous,
"unreasonabl[e]," or "vexatious[]." Accordingly, Weiner's
request is denied.

## Conclusion

In sum, the bankruptcy court's orders are affirmed in all
relevant respects, and Weiner's request for sanctions is denied.

Clerk to enter judgment.

SO ORDERED.

Dated:    New York, NY

          May 6, 2019                    JED S. RAKOFF, U.S.D.J.

36